IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 2, 2025

## STATE OF TENNESSEE v. DEMONTE ISOM

**Appeal from the Criminal Court for Shelby County**
No. 23-01320          James Jones, Jr., Judge

_____

## No. W2024-01780-CCA-R3-CD
_____

A Shelby County jury convicted the Defendant, Demonte Isom, of first degree premeditated murder, and the trial court imposed a life sentence. On appeal, the Defendant asserts that there is insufficient evidence to support his conviction. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, PJ., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JILL BARTEE AYERS, JJ., joined.

Paul K. Guibao, Memphis, Tennessee, for the appellant, Demonte Isom.

Jonathan Skrmetti, Attorney General and Reporter; Park Huff, Assistant Attorney General; Steven J. Mulroy, District Attorney General; and M. Haden Lawyer and Caleb Sanders, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
## I. Facts

This case arises from a shooting that occurred outside a birthday party on Director's Row in Memphis, Tennessee. The Defendant attended the party with friends. As he stood outside, some female party-goers started yelling at the victim, Eugene Keefer. The Defendant and Devonta Somerville approached the victim, and the Defendant fired multiple shots, killing the victim. For his role in this incident, a Shelby County grand jury indicted the Defendant for the first degree premeditated murder of the victim. The case proceeded to trial. We summarize the evidence presented at trial as follows.

On September 24, 2022, Memphis Police Lieutenant Cornell McKinnie responded to a homicide call to Director's Row, off of Airways Boulevard, in Memphis, Tennessee. He found that the victim had been fatally shot next to the driver's side door of the victim's vehicle. A woman who had notified the police of the shooting, Ms. Slaughter, explained that she had rented the property for a birthday party. The location was a building with individual office suites that could be rented. Lieutenant McKinnie identified a photograph of the suite where the party was held.

Lieutenant McKinnie testified that there were no witnesses to interview when he arrived at the scene because upon hearing the gunfire, "everyone cleared out and left." Emergency responders transported the victim to the Regional facility for an autopsy and the victim's car was transported to the Crime Scene Lab for processing.

Lieutenant McKinnie obtained access to surveillance video footage from the property. The State played the surveillance footage for the jury. The video footage showed the victim pull into a wide driveway between two buildings and park to one side of the driveway. Four or five car lengths in front of him is Nessiah McKinley's car. The victim exits his vehicle and walks off camera. Later he reenters the camera view, and walks toward his car. The victim stands in the middle of the driveway near his car and talks with a woman while the Defendant can be seen walking with his friends to Ms. McKinley's car and then he enters the car. Mr. Somerville and "Chris" follow, standing outside the car. Two other women join the woman who is talking with the victim and then the women scatter. The Defendant, Mr. Somerville, and Chris walk toward the victim and begin talking with him. They push the victim and Mr. Somerville points his finger in the victim's face. Chris walks around to the passenger side door of the victim's car, opens the car door, and leans down in the car. The Defendant, who is standing by the driver's side door with the victim, shoves the victim, and then extends his arm and fires his gun multiple times. The video shows the Defendant holding a gun and a muzzle flash as he fires the gun. The victim drops to the ground and the Defendant and Mr. Somerville return to Ms. McKinley's white car. After the men get in, Ms. McKinley immediately drives away. Other party-goers walk over to look at the victim's body. Lieutenant McKinnie stated that it was not until Ms. Slaughter, the woman who rented the party space arrived and saw the body, that 911 was called.

Lieutenant McKinnie testified that, during the investigation, he developed two persons of interest: Mr. Somerville and Ms. McKinley. Mr. Somerville was identified through a Crime Stoppers tip, and Ms. McKinley was developed as a person of interest due to her vehicle appearing in the video. Lieutenant McKinnie contacted both Mr. Somerville and Ms. McKinley, and they agreed to meet with him. Lieutenant McKinnie showed Mr. Somerville a photographic lineup. Mr. Somerville circled a photograph of the Defendant indicating that he was the shooter and then signed his name at the bottom of the lineup.

Mr. Somerville also verbally identified the Defendant as the shooter. Lieutenant McKinnie showed Ms. McKinley the photographic lineup as well, and she identified the Defendant as the shooter. Next to the photograph of the Defendant, she wrote, "He walked to my car and got in my car and I pulled off." She also wrote, "[The Defendant], the one killed the [victim] on Airways."

Lieutenant McKinnie showed Mr. Somerville a still photograph taken from the surveillance video footage. The photograph showed a man present during the shooting who wore a blue hoodie. Mr. Somerville identified himself as the person in the photograph wearing the blue hoodie. Ms. McKinley also identified Mr. Somerville as being present during the shooting. All of the information Mr. Somerville and Ms. McKinley provided was consistent with the evidence recovered during the investigation.

Nessiah McKinley testified that she knew the Defendant through her friend, "Mikayla." On the night of the shooting, Ms. McKinley was with her cousin, "Mariah," Mr. Somerville, and the Defendant. Ms. McKinley had driven the group to a party on Director's Row to pick up "Chris." Ms. McKinley and Mariah sat in the car while the Defendant and Mr. Somerville went into the building. At some point, the Defendant, Mr. Somerville, and Chris left the party and came out to Ms. McKinley's car. A group of "girls" began yelling at the victim, who was standing by his car, a short distance from Ms. McKinley's car. The Defendant, Mr. Somerville, and Chris walked over toward the victim while Ms. McKinley remained seated in the driver's seat of the car.

Ms. McKinley testified that when she "looked back," the Defendant, Mr. Somerville, and Chris were running to her car. When asked for clarification, she stated, "They ran to my car after [the Defendant] shot him." Mr. Somerville and the Defendant got into Ms. McKinley's car, and Chris ran toward the building. Ms. McKinley did not see the Defendant with a gun when he exited her car, but she saw a gun in his hand when he shot the victim and when he entered the back seat of her car after the shooting. After getting in the car, the Defendant put the gun in his pants. Mariah started threatening to "call somebody" and the Defendant told her to "shut up before he shoot her too." Ms. McKinley urged Mariah to be quiet because she was afraid, and she wanted "to hurry up and drop [the Defendant] off." The Defendant exited the vehicle at an apartment complex located on Airways Boulevard. Ms. McKinley had not spoken with the Defendant since the night of the shooting.

The State played the surveillance footage, and Ms. McKinley identified her white car in the footage. She also identified her cousin, "Mariah," seated in the backseat and the Defendant walking out to her car, followed by Chris and Mr. Somerville, who was wearing a blue hoodie. Ms. McKinley estimated that she heard two or three gunshots when the Defendant fired his gun at the victim.

3

Ms. McKinley testified that she drove away after the shooting because she was scared. She was eighteen years old at the time and had never been in a situation involving a shooting. Ms. McKinley did not call 911 but ultimately spoke with the police on October 8, 2022. She initially lied to the police out of fear but then told them a version of the night's events which was consistent with her trial testimony. She identified the photographic lineup in which she identified the Defendant as the shooter. When speaking with the police, she told them that she did not "want nobody to know [she] said something," but she denied that the Defendant had ever told her to remain silent. Ms. McKinley confirmed that she did not want to testify at the trial but she confirmed that she saw the Defendant shoot the victim.

Devonta Somerville testified that he rode to Director's Row in Ms. McKinley's car and "[s]omebody got shot." Mr. Somerville said that he had been drinking and smoking pot that night, so he did not remember everything clearly. He agreed that he did not want to testify or be present at the Defendant's trial. The State showed Mr. Somerville still photographs taken from the surveillance video. Mr. Somerville identified the building where the party was held and Ms. McKinley's car. Mr. Somerville stated that he could not recall who shot the victim. Upon further questioning, he stated, "I plead the Fifth." The trial court explained the Fifth Amendment right against self-incrimination to Mr. Somerville. The trial court then allowed Mr. Somerville to speak with his mother and an attorney who represented him in other cases and was familiar with the case at trial.

Mr. Somerville identified the photograph taken from the surveillance video, in which he had identified himself for the police. Mr. Somerville also identified the photographic lineup on which he identified the Defendant. Mr. Somerville confirmed that the Defendant shot the victim.

The Medical Examiner testified that the victim died of multiple gunshot wounds.

Based upon this evidence the jury convicted the Defendant of the first degree premeditated murder of the victim. The trial court imposed a life sentence. It is from this judgment that the Defendant appeals.

## II. Analysis

On appeal, the Defendant challenges the sufficiency of the evidence against him. He asserts that the convicting evidence is insufficient because the State's case relied solely on the testimony of Ms. McKinley and Mr. Sommerville, neither of whom was credible.

4

The State maintains that the evidence was sufficient to prove that the Defendant intentionally and with premeditation shot and killed the victim. We agree with the State.

When an accused challenges the sufficiency of the evidence, this court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

First degree murder is defined as a "premeditated and intentional killing of another." T.C.A. § 39-13-202(a)(1) (2018). Premeditation refers to "an act done after the exercise of reflection and judgment." T.C.A. § 39-13-202(d) (2018). Whether the defendant premeditated the killing is for the jury to decide, and the jury may look at the circumstances of the killing to decide that issue. *Bland*, 958 S.W.2d at 660. The Tennessee Code states that, while "the intent to kill must have been formed prior to the act itself," that purpose need not "pre-exist in the mind of the accused for any definite period of time" for a defendant to have premeditated the killing. T.C.A. § 39-13-202(d) (2018).

The evidence, viewed in the light most favorable to the State, showed that the Defendant rode in Ms. McKinley's car with Mr. Somerville and Mariah to a party where the victim was also present. The Defendant was at Ms. McKinley's car when the victim walked out of the party to his own car. While at his car, the victim drew the attention of a group of females, who began yelling and pointing at the victim. The Defendant approached the victim and fired his gun at him three times, shooting and killing the victim. The Defendant then ran to Ms. McKinley's car, put his gun in his pants, and they drove away. When another passenger suggested alerting someone of the shooting, the Defendant threatened to "shoot her too." In the following investigation, Ms. McKinley and Mr. Somerville identified the Defendant in a photographic lineup as the shooter. Surveillance video footage showed the Defendant and Mr. Somerville walking over to the victim's car, the Defendant raising his arm, and then a muzzle flash emanating from his gun, before he ran away.

The Defendant attempts to discredit Ms. McKinley's and Mr. Somerville's testimony; however, the weight and value to be given to witness testimony as to credibility, is within the province of the jury. *Bland,* 958 S.W.2d at 659. By its verdict, the jury resolved any question of credibility in favor of the State. We agree that neither witness wanted to testify against the Defendant; however, despite their reluctance, both witnesses at trial and during police questioning identified the Defendant as the shooter. Further, their

testimony about the shooting was consistent with the rest of the evidence gathered during the investigation.

Accordingly, we conclude that there was sufficient evidence to prove, beyond a reasonable doubt, that the Defendant intentionally and with premeditation shot and killed the victim. The Defendant is not entitled to relief.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the trial court's judgment.

_____s/ *ROBERT W. WEDEMEYER*_____
ROBERT W. WEDEMEYER, PRESIDING JUDGE